1
2
3
4
5
6           **UNITED STATES DISTRICT COURT**
7           **EASTERN DISTRICT OF CALIFORNIA**
8

| | |
|---|---|
| **In re:  WILLIAM P. IRWIN** ) | **DISTRICT COURT CASE** |
| ) | **NO. CIV-F-05-0940 AWI** |
|        **Debtor.** ) | |
| _____ ) | **BANKRUPTCY COURT CASE** |
| ) | **NO. 04-19318-A-7** |
| **THOMAS H. OHANIAN,** ) | |
| ) | **ORDER RE: MOTION FOR STAY** |
|        **Appellant**, ) | |
| ) | |
|      **v.** ) | |
| ) | |
| **WILLIAM P. IRWIN,** ) | |
| ) | |
|        **Appellee**. ) | |
| _____ ) | |

The matter is before the court on a bankruptcy appeal.  Appellant has made motion for a stay pending appeal of the bankruptcy court's order avoiding his judicial liens on Appellee's property.  Appellee opposes the motion.  Oral argument was held on February 27, 2006.

### I. History

William Irwin filed a Chapter 7 bankruptcy petition on November 3, 2004.  A Chapter 7 Trustee, James Salven, was appointed in this case.  His case was assigned to Bankruptcy Judge Whitney Rimel.  At the time of his filing, Irwin resided at 1441 Morris Avenue in Fresno ("Property").  The undisputed fair market value of the Property was $425,000.  Irwin claimed a

$150,000 homestead exemption under Cal. Code of Civ. Proc. § 704.730(a)(3).[1]  Bank of America held a $188,647 mortgage on the Property as of that date.  Irwin also owed Fresno County $17,482.92 secured by a tax lien on the Property.  In addition, three judgement liens existed against the Property: Richard Gunner perfected a $55,760.24 lien on September 7, 1999, which had increased to $85,758.56 as of November 3, 2004 by including interest; Appellant Thomas Ohanian perfected a $209,482 lien on June 19, 2001; and Jim O'Neal perfected a $100,991 lien on July 6, 2004.  The origin of Ohanian's lien was a judgment in case where Ohanian's father sued Irwin for breach of contract, fraud, and malpractice.  Since 1994, the formal owner of the Property was the "William P. Irwin and Jo Ann Irwin Revocable Living Trust."  Their daughter, Tracy Barry, was named the liquidating trustee upon their deaths.  Under the design of revocable living trust, property passes in accordance with the terms of the trust, avoiding probate; the liquidating trustee normally manages the assets without court supervision. Jo Ann Irwin had passed away by the time the bankruptcy petition was filed.  William Irwin passed away on November 7, 2004.

As the sum total of liens on the Property plus the $150,000 homestead exemption exceeded the fair market value of the Property, Appellee filed a motion to avoid judgment liens on the Property on March 16, 2005.  The motion was denied without prejudice on April 13, 2005 due to defective service.  On April 27, 2005, Appellee filed a second motion to avoid judgment liens on the Property concurrently with a motion by Barry to substitute herself in as a party for the second motion to avoid judgment liens.  Ohanian (but not Gunner and O'Neal) opposed the motions.  Oral argument was held on May 25, 2005 after which Judge Rimel took the matters under submission.  On June 29, 2005, Judge Rimel issued Findings of Fact and Conclusions of

---

[1]Cal. Code of Civ. Proc. § 704.730(a)(3) requires those seeking an exemption to qualify under one of its three subparts.  The record before the court does not show which prong Irwin falls into.  However, there is no indication that Ohanian has raised or disputed this issue.  Judge Rimel states that "No one has challenged the exemption claimed by the debtor when the case was filed." Doc. 19, Ex. H, at 6:26-27.  So, it is assumed that Irwin qualified under one of the three subparts.  California has opted out of the federal exemption scheme, and so debtors in California are entitled to the California homestead exemption. Kendall v. Pladson, 35 F.3d 462, 464 (9th Cir. 1994).

1    Law ("June 29 Findings") granting both the second motion to avoid judicial liens and the motion

2    to substitute parties.  On July 11, 2005, Judge Rimel formally issued an order avoiding judicial

3    liens ("OAL") and an order substituting parties.  The OAL completely avoided Ohanian's

4    $209,482 lien and O'Neal's $100,991 lien while avoiding Gunner's lien to the extent it exceeded

5    $68,870.08.

6          On July 20, 2005, Ohanian filed a notice of appeal as to both OAL and the order

7    substituting parties, forming the substance of the case before this court.  On August 9, 2005,

8    Ohanian filed a motion to stay the effectiveness of the OAL.  A hearing was scheduled for

9    September 13, 2005 was moved to August 31, 2005 and designated as a preliminary hearing on

10   the request of Ohanian. Doc. 19, Ex. D.  Due to the shortened schedule, opposition to the motion

11   was argued at the hearing without prior briefing.  At the August 31, 2005 hearing, Judge Rimel

12   made a ruling from the bench ("August 31 Findings") granting a temporary stay of the OAL.

13   Doc. 19, Ex. F.  On September 12, 2005, Judge Rimel issued a written order ("Bankruptcy Stay")

14   that the OAL "shall be and hereby is STAYED until the first date that is more than 30 days

15   following the entry of any order by this court on a motion to abandon the Property" but denying

16   the "request made by [Appellant] for a stay of the effectiveness of the OAL for the entire

17   duration of Ohanian's appeal." Doc. 19, Ex. G, at 2.

18         On July 25, 2005, the Chapter 7 trustee filed a "Notice of Intent to Abandon Property"

19   which indicated his plan for the estate to abandon its interest in the Property.  On September 7,

20   2005, Appellee filed a motion to compel the Chapter 7 trustee to abandon the Property.  Ohanian

21   opposed the motion while the Chapter 7 trustee did not oppose the motion.  A hearing was held

22   on October 5, 2005 at which time the matter was taken under submission.  On January 12, 2006,

23   Judge Rimel issued findings of fact and conclusions of law and a separate order granting Barry's

24   motion to compel abandonment. Doc. 19, Exs. H and I.  Judge Rimel found that Ohanian is not a

25   creditor (secured or unsecured) of the Irwin estate. Doc. 19, Ex. H, at 5:18-20.  Rather, he simply

26   holds a lien on the Property.  Ohanian has also appealed Judge Rimel's decision to grant the

27   motion to compel abandonment.  While appeal to the district court was filed January 23, 2006,

28   the case does not yet appear in our records.  Similarly, there has been a delay in the processing of

1   the current appeal.  While Ohanian filed the appeal on July 20, 2005, the district court had not

2   received certification that the record for appeal was complete until February 2, 2006.

3   Consequently, there has not yet been briefing on the merits of the appeal.

4       The Bankruptcy Stay is set to automatically expire 30 days after entry of a bankruptcy

5   order on a motion to abandon the Property.  Whether the order compelling abandonment qualifies

6   as such an order has not been judicially determined.  Based on that possibility, on January 31,

7   2006, Ohanian filed a motion seeking a district court stay of the OAL and an ex parte motion to

8   shorten time to schedule the hearing on February 13, 2006. Docs. 4 and 7.  Appellee filed an

9   opposition to the motion seeking to shorten time on February 1, 2006, Doc. 11.  On February 6,

10  2006, the court issued an order setting a revised briefing schedule, scheduling a hearing for

11  February 27, 2006, and granting a limited stay of the OAL until February 28, 2006. Doc.  12.

12  Appellee filed a timely opposition to the motion on February 15, 2006. Doc. 18.  Ohanian filed a

13  timely reply on February 17, 2006. Doc. 20.  Oral argument was held on February 27, 2006.

14

15                            **II. Legal Standards**

16       "An appellant seeking a discretionary stay pending appeal under Bankruptcy Rule 8005

17  must prove: (1) appellant is likely to succeed on the merits of the appeal; (2) appellant will suffer

18  irreparable injury; (3) no substantial harm will come to appellee; and (4) the stay will do no harm

19  to the public interest." Universal Life Church v. United States, 191 B.R. 433, 444 (E.D. Cal.

20  1995), citations omitted.  "The party moving for a stay has the burden on each of these

21  elements." In re Shenandoah Realty Partners, L.P., 248 B.R. 505, 510 (W.D. Va. 2000).

22  "Movant's failure to satisfy one prong of the standard for granting a stay pending appeal dooms

23  the motion." In re Deep, 288 B.R. 27, 30 (N.D.N.Y. 2003), citations omitted; accord In re Pon,

24  No. C-93-2745 MHP, 1994 U.S. Dist. LEXIS 2559, at *6 (N.D. Cal., February 25 1994).

25       Under Federal Rules of Bankruptcy 8005, "A motion for a stay of the judgment, order, or

26  decree of a bankruptcy judge...pending appeal must ordinarily be presented to the bankruptcy

27  judge in the first instance....A motion for such relief, or for modification or termination of relief

28  granted by a bankruptcy judge, may be made to the district court or the bankruptcy appellate

                                        **4**

1   panel, but the motion shall show why the relief, modification or termination was not obtained

2   from the bankruptcy judge."  Review of the bankruptcy judge's decision is limited.  "[A]ppellate

3   courts are reluctant to entertain a request for stay unless it is demonstrated that the trial judge is

4   unavailable or that the request was denied by the trial judge. Nevertheless, only in the former

5   situation does the appellate tribunal normally exercise its own discretion; in other instances (such

6   as where the trial court has denied the stay) the appellate court simply determines whether the

7   trial court abused its discretion." In re Wymer, 5 B.R. 802, 807 (B.A.P. 9th Cir. 1980).  "When a

8   bankruptcy court has ruled on the issue of a stay of its order pending appeal, the district court,

9   sitting as an appellate court, reviews that decision for abuse of discretion." Universal Life Church

10  v. United States, 191 B.R. 433, 444 (E.D. Cal. 1995).  "Discretion will be found to have been

11  abused when the judicial action is arbitrary, fanciful or unreasonable which is another way of

12  saying that discretion is abused only where no reasonable man would take the view adopted by

13  the trial court. If reasonable men could differ as to the propriety of the action taken by the trial

14  court, then it cannot be said that the trial court abused its discretion. It is equally well-established

15  that on appeal to the district court from bankruptcy court, issues of law are reviewed de novo

16  while the district court is constrained to accept the bankruptcy court's findings of facts unless

17  they are clearly erroneous." In re Blackwell, 162 B.R. 117, 119 (E.D. Pa. 1993).

18

19                                          **III. Discussion**

20      While Judge Rimel did grant a temporary stay, she denied a request for a more permanent

21  stay.  At the hearing on August 31, 2005, Judge Rimel said that "the statements I made at the

22  beginning of the hearing...will constitute my findings of fact and conclusions of law with respect

23  to this motion." Doc. 19, Ex. F, August 31 Findings, at 10:2-4.  The substance of her findings

24  are:

25          This Court is not persuaded, based on the papers before me, that, first of all, there will be
            irreparable harm. There's no evidence that anybody is trying to sell this property. I don't
26          have, because this is the first hearing and there hasn't been any opposition filed, any
            evidence about substantial injury to the other party [Appellee].
27              In this Court's view, there is not a substantial possibility appellant will prevail on
            appeal. Not just because I think the decision I wrote was correct...[but] because it's
28          supported by published decision of the Bankruptcy Appellate Panel.

                                                 **5**

1  Doc. 19, Ex. F, at 4:19-5:5.  The final, written order on the matter stated that "The Court denies

2  the request made by Moving Party [Appellant] for a stay of the effectiveness of the OAL for the

3  entire duration of Ohanian's appeal, i.e. until such time as there would be a final nonappealable

4  order on the issue of the avoidability of Ohanian's lien." Doc. 19, Ex. G, Bankruptcy Stay, at

5  2:24-3:2.

6        On August 31, 2005, Judge Rimel said "I'm inclined to grant a temporary stay for thirty

7  days to allow the appellant to go to District Court and seek a stay – any further extent of a stay.

8  That solves the rush to the courthouse problem, keeps the parties in the same position they are

9  now, and you can ask the District Court who has the appeal pending before it if the District Court

10  thinks the stay is reasonable." Doc. 19, Ex. F, August 31 Findings, at 5:7-13.  Ohanian says that

11  "the Bankruptcy court awarded a stay of limited duration, and in fact the language used by the

12  bankruptcy judge expressly contemplated that any additional stay would have to be obtained

13  from the District Court...to allow the District Court to decide whether a longer stay was

14  'reasonable.'" Doc. 20, Reply, at 5:9-17, emphasis in original.  At oral argument on February 27,

15  2006, Appellant again asserted that Judge Rimel effectively invited the district court to make an

16  independent review of the motion regardless of the appropriate standard of review.  The court

17  disagrees with this interpretation of Judge Rimel's intent.  She explicitly denied Ohanian's

18  request for a stay lasting for the duration of the appeals process. Doc. 19, Ex. G, Bankruptcy

19  Stay.  From the language she used, it seems that she wished to avoid the "rush to the courthouse

20  problem" that would occur if she issued no stay at all.  The limited Bankruptcy Stay was

21  designed to allow Appellant adequate time to seek a stay from district court, but did not in any

22  way indicate an abdication of her responsibility to make a full ruling on the motion before her.

23  Even if, arguendo, Judge Rimel's statement were read as a suggestion that the district court apply

24  a reasonableness standard in determining whether to grant a stay, the district court is not

25  constrained by such a suggestion and is bound to apply the legally correct standard.

26

27  **A. Standard of Review**

28        All parties agree as to the substantive standard for obtaining a stay.  The seeker of the stay

1    (Ohanian) has the burden of showing (1) he is likely to succeed on the merits of the appeal; (2)

2    he will suffer irreparable injury; (3) no substantial harm will come to Appellee; and (4) the stay

3    will do no harm to the public interest.  With respect to these four factors, Appellee summarizes

4    Judge Rimel's findings as follows:

5        The bankruptcy court held that Ohanian failed to meet his burden on the first two
         elements. The bankruptcy court further indicated that it has no basis upon which to
6        determine whether Appellee will suffer substantial harm in that Appellee was not allowed
         the opportunity to file a written opposition and present evidence to such effect. The
7        bankruptcy court made no mention as to whether it believed Ohanian had or had not met
         his burden as to the fourth factor implicating public policy.

8    Doc. 18, Opposition, at 9:3-15.

9        The parties disagree as to what weight this court should give Judge Rimel's findings.  In

10   the order granting a temporary stay and rescheduling this hearing, the court stated that the

11   applicable standard was reviewing Judge Rimel's ruling for abuse of discretion, largely relying

12   on an old BAP decision, In re Wymer, 5 B.R. 802 (B.A.P. 9th Cir. 1980). See Doc. 12, February

13   6, 2006 Order.  Appellee agrees that abuse of discretion is the correct standard. Doc. 18,

14   Opposition, at 6:12-21.

15       Ohanian argues that abuse of discretion is the incorrect standard, and the court must make

16   a completely independent evaluation.  He argues that, structurally, his motion for a district court

17   stay is an independent motion and not an appeal of Judge Rimel's denial of a more lasting stay.

18   Indeed, a BAP concurring opinion states that "the proper procedure after denial of a stay pending

19   appeal by a bankruptcy court is not to appeal the denial, but rather to request a stay directly from

20   the [appellate court]. Therefore, no appeal may lie from the bankruptcy court's denial of the

21   stay." BC Brickyard Assocs. v. Ernst Home Ctr., Inc., 221 B.R. 243, 248 (B.A.P. 9th Cir. 1998).

22   "Considering civil procedure in the abstract, 'abuse of discretion' is one of the standards applied

23   upon the appeal of an order of a lower court or administrative tribunal, but it is not found among

24   the standards used for determining a motion, and for good reason: in order to apply the standard,

25   there must necessarily be 'at issue' the decision of an inferior court or tribunal capable of

26   exercising (and thus abusing) its discretion." Doc. 20, Reply, at 8:3-10, emphasis in original.

27   However, Bankruptcy Rule 8005 explicitly provides that "the motion shall show why the relief,

28

7

modification, or termination was not obtained from the bankruptcy judge." Fed. R. Bankr. Proc. 8005.  Inherent in the motion is a requirement that the moving party provide a record of the bankruptcy court's actions (be it contained in a formal order or otherwise) for review.  There is no contradiction in applying an appeals standard to these motions for stays.

Ohanian represents that there is a lack of consensus as to how to review these motions under Bankruptcy Rule 8005.  He cited to six cases from district courts across the country that he said made independent evaluations of these motions to stay without giving any deference to bankruptcy court findings, i.e. did not act as if they are reviewing another court's order on appeal. Doc. 20, Reply, at 9:5-14.  Review of these cases show that one court actually applied an abuse of discretion standard[2] while another cited to another case which plainly reviewed the motion as if it were an appeal[3].  In two other cases, there is no indication that the court in fact held appellant to the requirement that a motion for stay pending appeal under Bankruptcy Rule 8005 first approach the bankruptcy court for a stay. See In re Adelphia Communs. Corp., 333 B.R. 649, 659 (S.D.N.Y. 2005); In re Deep, 288 B.R. 27, 29 (N.D.N.Y. 2003).

Ohanian then cites to two cases for the proposition that "the decision to grant or to deny a stay pending appeal of a bankruptcy court order rests in the discretion of the district court." WCI Cable, Inc. v. Alaska R.R. Corp., 285 B.R. 476, 478 (D. Or. 2002), citing In re First South Sav. Assoc., 820 F.2d 700, 709 (5th Cir. 1987).  The District of Oregon opinion was not on a motion to stay a bankruptcy court's order pending appeal under Bankruptcy Rule 8005; instead it dealt

---

[2]"In reviewing the orders of the bankruptcy court, findings of fact are reviewed under a 'clearly erroneous' standard, and conclusions of law are reviewed de novo. Parties seeking a stay pending appeal of an order of the bankruptcy court must ordinarily apply to the bankruptcy judge in the first instance. Only then may a party move for a stay in the district court, provided that the motion shows why the relief  was not obtained from the bankruptcy judge." In re Family Kingdom, 225 B.R. 65, 69 (D.N.J. 1998), quotations omitted.

[3]"This court's decision in the case of In re Skinner, 202 B.R. 867 (W.D. Va. 1996), provides the framework for analysis of [appellant's] request for a stay pending appeal." In re Shenandoah Realty Partners, L.P., 248 B.R. 505, 510 (W.D. Va. 2000).  In determining if stay was appropriate, "Review of the bankruptcy court's conclusions of law by this court is de novo." In re Skinner, 202 B.R. 867, 869 (W.D. Va. 1996).

1   with a motion to stay a withdrawn matter (already before the district court) pending appeal of a

2   collateral decision in the bankruptcy court. WCI Cable, Inc. v. Alaska R.R. Corp., 285 B.R. 476,

3   478 (D. Or. 2002).  In the Fifth Circuit case, the court noted the special procedural background of

4   the case before it: "[the district] court was confronted with the task of determining the propriety

5   of a stay in an emergency context, without the benefit of the reasons underlying the bankruptcy

6   court's denial of the request for a stay." In re First South Sav. Assoc., 820 F.2d 700, 708 (5th Cir.

7   1987).  Further, the Fifth Circuit applied an abuse of discretion standard, stating that "In

8   assessing the propriety of the district court's decision to deny a stay pending appeal of the

9   bankruptcy court's [order], we note that the district court's decision to grant or deny a stay

10  pending appeal rests in the discretion of that court. However, the exercise of that discretion is not

11  unbridled but rather, the court must exercise its discretion in light of what this court has

12  recognized as the four criteria for a stay pending appeal." In re First South Sav. Assoc., 820 F.2d

13  700, 709 (5th Cir. 1987).  As another case Ohanian cites stated "the district court stands in the

14  same relation to the bankruptcy court as does the circuit court to the district court when a party

15  seeks a stay of a district court order." In re Adelphia Communs. Corp., 333 B.R. 649, 659

16  (S.D.N.Y. 2005).

17          While arguing that abuse of discretion is the incorrect standard, Ohanian does recognize

18  that some courts do in fact apply that standard citing two cases. Doc. 20, Reply, at 9:12-14.

19  Nevertheless, he represents that it "is not the majority standard." Doc. 20, Reply, at 10:2-3,

20  emphasis in original.  Ohanian specifically criticized the BAP case, In re Wymer, 5 B.R. 802,

21  807 (B.A.P. 9th Cir. 1980), as it is 25 years old and applied  Bankruptcy Rule 805, the

22  predecessor to the modern Bankruptcy Rule 8005. Doc. 20, Reply, at 7:19-22.  While this is true,

23  a later BAP decision suggested in dicta that abuse of discretion is the right standard when dealing

24  with Bankruptcy Rule 8005: "Under Fed.R.Bankr.P. 8005, a bankruptcy court 'may suspend or

25  order the continuation of other proceedings in the case' while an order is on appeal. The Rule

26  does not provide that the bankruptcy court must stay all other proceedings. The court had the

27  discretion to stay the proceedings in this case." In re Hagel, 184 B.R. 793, 798-99 (B.A.P. 9th

28  Cir. 1995).  Among the federal district courts overseen by the Ninth Circuit, the abuse of

discretion standard has been explicitly applied several times in deciding motions for stay pending appeal under Bankruptcy Rule 8005. See, e.g. <u>Universal Life Church v. United States</u>, 191 B.R. 433, 444 (E.D. Cal. 1995) ("When a bankruptcy court has ruled on the issue of a stay of its order pending appeal, the district court, sitting as an appellate court, reviews that decision for abuse of discretion"); <u>Lynch v. Cal. PUC</u>, No C-04-0580 VRW, 2004 U.S. Dist. LEXIS 6022, at *5 (N.D. Cal., April 9, 2004) ("When a bankruptcy court has ruled on the issue of a stay of its order pending appeal, the district court reviews that decision for an abuse of discretion"); <u>In re Pon</u>, No. C-93-2745 MHP, 1994 U.S. Dist. LEXIS 2559, at *5 (N.D. Cal., February 25 1994) ("The standard of review for a bankruptcy court's decision to grant or deny a stay pending appeal is abuse of discretion"); <u>In re Wilson</u>, 53 B.R. 123, 124 (D. Mont. 1985).  Upon review, the court finds that the abuse of discretion standard, while not universally applied, is the correct standard for this motion.

Ohanian makes another argument regarding the evaluation of conclusions of law within the abuse of discretion context.  He appears to have misconstrued how the district court has stated the abuse of discretion standard contained in the February 6, 2006 Order.  Ohanian argues, at length, that "'abuse' must be defined expansively to include errors of law."  Doc. 20, Reply, at 6:4-5.  As was noted in the earlier order, it is "well-established that on appeal to the district court from bankruptcy court, issues of law are reviewed de novo while the district court is constrained to accept the bankruptcy court's findings of facts unless they are clearly erroneous."  <u>In re Blackwell</u>, 162 B.R. 117, 119 (E.D. Pa. 1993).  The abuse of discretion standard encompasses a de novo review of the law.

**B. Merits of the Appeal**

**1. Capacity to Bring Motions**

Ohanian argues that "it is self-evident that if an individual debtor has died after filing a bankruptcy petition, it is no longer possible for any motion to be brought in the name of that individual."  Doc. 5, Moving Brief, at 10, 15-18.  The motion to avoid judicial liens was brought in conjunction with a motion to substitute parties under Federal Rules of Civil Procedure

25(a)(1) (made applicable to bankruptcy proceedings through Federal Rules of Bankruptcy Procedure 7025), allowing Barry to substitute for her father.  That motion was heard at oral argument simultaneously with the motion to avoid judicial liens; it was granted by formal written order on the same day as the OAL. See Doc. 19, Exs B and C.  In effect, Barry, as a substitute for her father, was the party that brought the lien avoidance motion ab initio.

**2. Motion for Substitution**

Ohanian then argues the motion for substitution of parties was procedurally defective. Doc. 5, Moving Brief, at 12:22-13:10.  Irwin died on November 7, 2004.  The motion to substitute parties was filed April 27, 2005.  Under Rule 25(a)(1), the motion for substitution must be "made not later than 90 days after the death is suggested upon the record by service of a statement of the fact of the death." Fed. R. Civ. Proc. 25(a)(1).  Judge Rimel found that "no party ever filed a formal statement of death of Debtor. The present motion to request substitution of parties can be deemed a statement of death, and accordingly, the present motion is timely within the 90-day period. Doc. 19, Ex. A, June 29 Findings, at 7:3-5.  Ohanian says that "a statement about the Debtor's death must necessarily have been made at the 12/9/04 report of continuance of the initial creditors' meeting in the case." Doc. 5, Moving Brief, at 13:7-10.  Even if Ohanian's assertion were true, an oral assertion would not serve as a properly filed statement of death served upon all relevant parties. See Barlow v. Ground, 39 F.3d 231, 233 (9th Cir. 1994) ("Although Rule 25(a)(1) could be clearer, a careful reading of the rule coupled with an understanding of its function leads to the conclusion that the rule requires two affirmative steps in order to trigger the running of the 90 day period. First, a party must formally suggest the death of the party upon the record. Second, the suggesting party must serve other parties and nonparty successors or representatives of the deceased with a suggestion of death in the same manner as required for service of the motion to substitute."); Acri v. International Asso. of Machinists & Aerospace Workers, 595 F. Supp. 326, 330 (N.D. Cal. 1983) ("Although dismissal appears to be mandatory under this Rule unless a motion to substitute a representative is made within 90 days of a suggestion of death on the record, the incidental mention of the deaths in answers to

11

interrogatories does not appear to this Court to have started the 90-day period running. Federal Form 30 provides an example of the proper suggestion; the answers to interrogatories cited by defendants do not rise to the required level of formality. Furthermore, the suggestion was not served as required by the provisions of the Rule").  Whether the motion to substitute parties and Judge Rimel's June 29 Findings satisfies Rule 25(a)(1) has not been questioned by the parties; no briefing or record has been provided on that issue.  The court expresses no opinion on that matter.

Ohanian states that Barry could not be a "successor" to Irwin since "Barry's only capacity was as a back-up trustee under [the William P. Irwin and Jo Ann Irwin Revocable Living Trust]." Doc. 5, Moving Brief, at 12:25-28.  Rule 25(a)(1) requires that a motion be "made by any party or by the successors or representatives of the deceased party." Fed. R. Civ. Proc. 25(a)(1).  Judge Rimel found that "The terms 'trustee' and 'successor' are not mutually exclusive....Barry 'follows' the Debtor with respect to the [Property] and is properly the successor." Doc. 19. Ex. A, at 6:4-10.  In at least one case, when one trustee of a living trust passed away, the remaining co-trustees were deemed "successors" and substituted pursuant to Rule 25(a)(1). See <u>Bracken v. Harris & Zide, LLP</u>, 219 F.R.D. 481, 485 (N.D. Cal. 2004) (no objection filed against substitution of co-trustees as defendants in case).

Ohanian argues that "state law is used to determine who is a proper successor for purposes of a substitution motion." Doc. 20, Reply, at 17:14-16.  However, the sources he cites to for support indicate otherwise. See <u>Servidone Constr. Corp. v. Levine</u>, 156 F.3d 414, 416 (2nd Cir. 1998) ("the Federal rules, rather than state-law principles, govern the procedure for substitution following a party's death, even where the court must apply state substantive law" in diversity cases); 7C Charles Alan Wright et al., Federal Practice and Procedure § 1952, at 526 (2d ed. 1986) ("In a federal question case, federal law and federal decisions, rather than state law, determine whether the action survives the death of a party").

**3. Section 522(f)**

As part of the initial filing of his Bankruptcy petition, Irwin claimed a homestead

1    exemption of $150,000 pursuant to Cal. Code of Civ. Proc. § 704.730(a)(3).  After his passing,

2    Appellee made a motion to avoid certain judicial liens pursuant to 11 U.S.C. § 522(f) which

3    states, "the debtor may avoid the fixing of a lien on an interest of the debtor in property to the

4    extent that such lien impairs an exemption to which the debtor would have been entitled under

5    subsection (b) of this section, if such lien is...a judicial lien."  Title 11 U.S.C. § 522(b) spells out

6    what qualifies as exempt property.  Judge Rimel granted the OAL on the basis that the "right to

7    exemptions is determined by the facts as they existed on the bankruptcy petition filing date."

8    Doc. 19, Ex. A, June 29 Findings, at 4:25-26, quoting In re Combs, 101 B.R. 609, 614 (B.A.P.

9    9th Cir. 1989).  Ohanian says that he "does not dispute that the exemption rights of Irwin were

10   fixed when he filed his petition." Doc. 5, Moving Brief, at 18:9-10.  Instead, he argues that

11   determination of exemption and avoidance of lien are two separate procedures with different

12   standards, citing to In re Morgan, 149 B.R. 147 (B.A.P. 9th Cir. 1993).  Ohanian makes the

13   argument that while the exemption is determined at the time of filing, determining whether

14   avoidance of the lien is proper must be made with reference to the time the motion is made.

15          With In re Morgan, the debtor claimed an exemption at filing which was not opposed at

16   the time.  Under 11 U.S.C. § 522(l), "The debtor shall file a list of property that the debtor claims

17   as exempt under subsection (b) of this section....Unless a party in interest objects, the property

18   claimed as exempt on such list is exempt."  The BAP found due process and equity concerns

19   with allowing such a default rule to operate without some substantive review to ensure that

20   property claimed as exempt actually complied with Section 522(b) before liens were avoided.

21   See In re Morgan, 149 B.R. 147, 152 (B.A.P. 9th Cir. 1993).  In order to provide some oversight,

22   the BAP found that

23          the language of § 522(f) indicates that exemption by default under § 522(1) does not
            automatically mean that a lien impairing the exemption may be avoided. The first element
24          of the test described above is that the debtor 'would have been entitled' to the exemption
            under § 522(b). That the debtor is entitled to the exemption by virtue of § 522(l) does not
25          mean that the debtor 'would have been entitled' to the exemption under § 522(b) which
            provides that a debtor may claim either state or federal exemptions. This language
26          requires the court to find that the debtor is entitled to the exemption under relevant state
            or federal law in order to authorize the avoiding of a lien under § 522(f). Reliance by the
27          exemption-by-default of § 522(1) does not satisfy this burden.

28   In re Morgan, 149 B.R. 147, 151-52 (B.A.P. 9th Cir. 1993), citations omitted.  That is, when a

1  motion is made under Section 522(f), the court must determine whether the claimed exemption

2  was proper in the first place under Section 522(b) even when objections are only raised at a later

3  motion to avoid liens.  "The exemption by default under section 522(l) is not an exemption to

4  which the debtor would have been entitled under subsection (b) of 11 U.S.C. § 522."  In re

5  Mohring, 142 B.R. 389, 394 (Bankr. E.D. Cal. 1992), quotations omitted.  In re Morgan does not

6  say that the exemption must be proper based on a determination of rights at the time of the

7  motion.  There is no case authority provided that suggests the right to exemption is determined

8  with reference to any time but the date of filing.  Indeed, the BAP has stated that "A debtor's §

9  522(f) lien avoidance rights are also determined as of the petition date. 'Because lien avoidance

10  is part and parcel of the exemption scheme, the right to avoid a judicial lien must also be

11  determined as of the petition date.'"  In re Goswami, 304 B.R. 386, 392 (B.A.P. 9th Cir. 2003),

12  quoting In re Chiu, 266 B.R. 743, 751 (B.A.P. 9th Cir. 2001).  Judge Rimel implicitly found that

13  Irwin was entitled to the exemption at the time of filing. See Doc. 19, Ex. A, at 5:19-21.

14      Ohanian argues substantively that the right to an exemption is necessarily personal to a

15  debtor and does not survive his/her death. Doc. 5, Moving Brief, at 13:19-23.  "The bankruptcy

16  court's focus on matters of estate administration in the context of a § 522(f)(1) motion is

17  misplaced for an additional reason. A debtor's right to avoid a lien under § 522(f) is a 'personal'

18  right of the debtor which exists independent of case administration. Indeed, the purpose of lien

19  avoidance under § 522(f) is to protect a debtor's exemptions." In re Goswami, 304 B.R. 386, 392

20  (B.A.P. 9th Cir. 2003), citations omitted.  The root of the "personal right" language can be traced

21  to a bankruptcy court decision from the District of Idaho: "The right to avoid liens on exempt

22  property under § 522(f) is a right granted to debtors under the Bankruptcy Reform Act of 1978. It

23  is a personal right given to a debtor, independent of case administration. It is fundamentally no

24  different than any other legal right available to an individual." In re Swanson, 13 B.R. 851, 854

25  (Bankr. D. Idaho 1981).  In general, legal rights available to an individual may or may not

26  survive death.  Ohanian provides no concrete case law suggesting the homestead exemption is

27  extinguished upon death of debtor.

28      Instead, Federal Rule of Bankruptcy Procedure 1016 says specifically that "Death or

**14**

1  incompetency of the debtor shall not abate a liquidation case under chapter 7 of the Code. In such

2  event the estate shall be administered and the case concluded in the same manner, so far as

3  possible, as though the death or incompetency had not occurred."  In the case cited by Judge

4  Rimel, a bankruptcy court in the Northern District found, "Because the Debtor's right to claim a

5  homestead exemption is generally fixed upon the date the chapter 7 petition is filed, the Debtor's

6  post-petition death does not affect his right to claim a declared homestead exemption under

7  California law." In re Combs, 166 B.R. 417, 421 (Bankr. N.D. Cal. 1994).  Indeed, it is well

8  settled that a claimed exemption (if valid under Section 522(b) at the time of filing) survives the

9  death of the debtor. See, e.g. In re Peterson, 897 F.2d 935, 937 (8th Cir. 1990) ("We do not agree

10 with Trustee's contention that [debtor's] death cause his exemption to lapse"); In re Friedman, 38

11 B.R. 275, 275-76 (Bankr. E.D. Pa. 1984) ("We conclude, pursuant to section 522(b)(2)(B) of the

12 Code and Bankruptcy Rule 1016, that the right to claim the exemption on behalf of the

13 debtor-husband vested at the time the debtors' filed their petition and that the debtor-husband's

14 subsequent death did not alter said claim of exemption"); In re Doyle, 209 B.R. 897, 907 (Bankr.

15 N.D. Ill. 1997) ("the statutory language, legislative history, and case law mandate the conclusion

16 that a debtor who dies post-petition is entitled to claims of exemption as well as a discharge"); In

17 re Costello, 72 B.R. 841, 844 (Bankr. E.D.N.Y. 1987) ("the homestead exemption claimed by

18 Mrs. Costello survives her death and inures to the benefit of her husband").

19

20 **4. Burden of Showing Property Owned by Irwin**

21      Ohanian argues that Appellee failed to show the Property was in fact owned by Irwin at

22 the time of filing. Doc. 5, Moving Brief, at 18:27-19:2.  "The general rule that the proponent of a

23 motion has the burden of proof applies to lien avoidance motions." In re Mohring, 142 B.R. 389,

24 392 (Bankr. E.D. Cal. 1992).  Ohanian states that there were "conflicting statements as to

25 whether the residence claimed exempt by the Debtor was in fact part of his bankruptcy estate.

26 The Bankruptcy Court did not have any basis for resolving these disputed statements and for

27 deciding, based solely on the equivocal Trust documents presented, that the Property had been

28 effectively made part of the Irwin Trust." Doc. 5, Moving Brief, at 19:7-12.  The court is forced

**15**

1   to conclude that Judge Rimel made factual findings concerning the ownership of the Property

2   based on documents presented to her.  While Appellant refers to "conflicting statements," he

3   does not provide the court with any record (either briefing, affidavits, or transcripts of hearings)

4   of these statements.  As there is no basis upon which to determine if Judge Rimel committed

5   clear error in making her factual finding, her conclusion must be accepted.

6       From a legal standpoint, Ohanian argues that a property transferred into a trust cannot be

7   part of a bankruptcy estate. Doc. 5, Moving Brief, at 19:3-4.  Title 11 U.S.C. § 541(a) specifies

8   that the bankruptcy estate includes "all legal or equitable interests of the debtor in property as of

9   the commencement of the case" with some limited exceptions.  Ohanian first cites to a case from

10  the bankruptcy court of the Western District of Pennsylvania, In re Mills, 41 B.R. 849 (Bankr.

11  W.D. Pa. 1984).  That court determined that property previously transferred to a trust for the

12  benefit of debtors' children (with a third party trustee) was not part of the bankruptcy estate and

13  could not be exempted as part of bankruptcy proceedings. In re Mills, 41 B.R. 849, 850 (Bankr.

14  W.D. Pa. 1984) ("The estate created under § 541 is broad and all-encompassing, and includes all

15  legal and equitable interests of the debtor in property, both tangible and intangible, including

16  exempt property. Nonetheless, it is clear that in the case at bar, Debtors had no interest in the

17  subject property at the time of filing").  However, there is a case directly on point which comes to

18  a different conclusion:

19      The trustee maintains that because debtor transferred title to the subject residence to the
        Living Trust before filing his bankruptcy petition, the residence is not property of the
20      estate pursuant to 11 U.S.C. § 541(a) from which debtor can claim an exemption. The
        trustee's contention that debtor cannot claim a homestead exemption in the subject
21      dwelling because legal title to the property is not held by the bankruptcy estate is without
        merit. While title to the dwelling is in the Living Trust, as the trustee asserts, debtor holds
22      various "legal interests" in the subject dwelling as a trustor and beneficiary of the living
        trust.
23          11 U.S.C. § 541(a)(1) provides that, inter alia, "....a [bankruptcy] estate is
        comprised of....all legal or equitable interests of the debtor...." Debtor's interest as a
24      trustor and beneficiary under the Living Trust, among other things, all became property of
        the bankruptcy estate pursuant to 11 U.S.C. § 541(a) upon the filing of debtor petition.
25      Debtor is entitled to claim an exemption in either of these legal interests.
            Pursuant to debtor's interest as trustor in the "revocable" living trust, the
26      bankruptcy estate holds a "contingent reversionary interest" in the subject dwelling. The
        bankruptcy trustee -- standing in debtor's place as trustor of the Living Trust -- can, in his
27      discretion, revoke the trust in whole or in part, reverting title in the residence back to the
        bankruptcy estate. Debtor claims a homestead in this "contingent reversionary interest"
28      and the trustee has failed to produce any legal authority for the proposition that a

16

homestead cannot be claimed in such an interest. The trustee has failed to meet his burden of proving a homestead exemption claim should be disallowed. Consequently, this court must find that debtor is entitled to claim a homestead exemption in his principal dwelling even if debtor's sole interest in the was a "contingent reversionary interest."

In re Moffat, 107 B.R. 255, 259-60 (Bankr. E.D. Cal. 1989).  Appellant asks the court to follow the logic of In re Mills, and reject the holding of In re Moffatt. Doc. 5, Moving Brief, at 19:20-26.  As the grantor-debtor in In re Mills had no interest remaining in the property, In re Mills can be factually distinguished from the present case (and In re Moffatt).  There appears to be a distinction between an irrevocable trust for the benefit of third parties and a living, revocable trust.  Judge Rimel applied the correct law in determining that the Property was part of the bankruptcy estate.

**C. Irreparable Harm to Appellant**

At the August 31, 2005 hearing, Judge Rimel found no irreparable harm since "There's no evidence that anybody is trying to sell this property." Doc. 19, Ex. F, August 31 Findings, at 4:21-22.  At that time, she was aware that the Chapter 7 trustee had filed a notice to abandon the Property. Doc. 19, Ex. F, August 31 Findings, at 8:8-13.  Ohanian argued that "it would be very difficult in a case like this for a moving party to present evidence that the other party is in the process of selling the property. Doc. 19, Ex. F, August 31 Findings, at 5:17-20.  The situation has factually changed since Judge Rimel granted an order to compel the Chapter 7 trustee to abandon the Property, and Appellee now represents that if the OAL were effective, she would "sell the [Property] today." Doc. 18, Opposition, at 12:14-15.  As Judge Rimel did not find a sale likely, she did not discuss whether sale of the Property constitutes irreparable harm.  This court must make a de novo review of that legal issue.

Initially, Ohanian represented that the irreparable injury from denial of a stay was the "depriv[ation] of the prospect of a money recovery on his judgment lien whether through a sale or through mootness of this appeal." Doc. 5, Moving Brief, at 21:3-5.  In his reply, Ohanian substantially revised both assertions.  As to mootness, Ohanian now recognizes that the possibility of mootness does not constitute irreparable harm. Doc. 20, Reply, at 20:4-5.

1   "Bankruptcy's mootness rule applies when an appellant has failed to obtain a stay from an order

2   that permits a sale of a debtor's assets." In re Onouli-Kona Land Co., 846 F.2d 1170, 1171 (9th

3   Cir. 1988).  "It is well settled that an appeal being rendered moot does not itself constitute

4   irreparable harm." In re 203 N. LaSalle St. Pshp., 190 B.R. 595, 598 (N.D. Ill. 1995), citing In re

5   Public Serv. Co. of New Hampshire, 116 Bankr. 347, 349-50 (Bankr. D.N.H. 1990).  Instead,

6   Ohanian "does not believe that this appeal will be rendered moot even if a stay is denied" by the

7   district court. Doc. 20, Reply, at 3:25-26.

8        As to denial of monetary recovery through sale of the Property, Ohanian initially said "the

9   Property or the value of Irwin's interest in the Property is his only recourse for recovering on the

10   judgment." Doc. 5, Moving Brief, at 20:16-19.  In his reply, Ohanian says "While it is clear that

11   Ohanian will be irreparably harmed by having the property exposed to sale free of his lien,

12   because Ohanian would then lose the main leverage he has to ensure payment of the lien, it does

13   not necessarily follow that Ohanian could no longer have a claim against Tracy Barry if it were

14   eventually found that his lien should not have been avoided but that Barry had gone ahead and

15   sold the property and dissipated the proceeds in the meantime." Doc. 20, Reply, at 21:22-22:2,

16   emphasis in original.  Ohanian is claiming that there will be irreparable harm from sale of the

17   Property even though he represents that he could still recover the amount of his judgment lien

18   from Barry even if there were a sale.  In speaking of "leverage," the court assumes Ohanian is

19   referring to the possibility of settlement with Barry.  Loss of bargaining power or negotiating

20   position does not constitute irreparable harm.  "[E]conomic injury alone does not support a

21   finding of irreparable harm, because such injury can be remedied by a damage award."

22   Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc., 944 F.2d 597, 603 (9th Cir.

23   1991).  The only harms Ohanian has put forth are economic in nature.  Further, he represents that

24   there are adequate causes of action to protect that interest if the Property is sold and the OAL is

25   ultimately overturned.  As Ohanian states that any injury may be remedied by a damage award,

26   Ohanian has not met his burden.

27        The court now independently finds no irreparable harm in denial of a stay.  As Appellant

28   cannot show the threat of irreparable injury under any standard, Appellant's motion for stay can

be denied on this basis alone. See In re Pac. Gas & Elec. Co., No C-02-1550 VRW; 2002 U.S. Dist. LEXIS 27549, at *7-8 (N.D. Cal., November 14, 2002) ("[T]he test for a stay pending appeal is susceptible to different formulation. 'Under any formulation of the test, [movants] must demonstrate that there exists a significant threat of irreparable injury.' If movants fail to meet the 'minimum showing' of a threat of irreparable injury, the court 'need not decide whether movants are likely to succeed on the merits'"), quoting Oakland Tribune, Inc. v. Chronicle Pub. Co., 762 F.2d 1374, 1376 (9th Cir. 1985).

As to the January 12, 2006 Order, this court will not unnecessarily interpret the terms of Judge Rimel's stay. Any previous statement as to whether denial of a stay by the district court would allow sale of the Property (implicitly finding that Judge Rimel's stay has already run out) has no binding legal effect and simply represented the court's understanding of the factual background in the case at the time. Indeed, should the issue arise at a later date, "the bankruptcy court's interpretation of its own order warrants customary appellate deference." In re Casse, 198 F.3d 327, 333 (2nd Cir. 1999), citations omitted. Similarly, the court does not, at this time, express any conclusion as to whether sale of the Property would render any appeal moot.

**D. Conclusion**

The standard of review for the motion is abuse of discretion. Nevertheless, Appellant cannot show that he is entitled to a stay on even a de novo standard of review. Appellant is not likely to succeed on the merits of the appeal, and Appellant will not suffer any irreparable harm from denial of a stay.

///
///
///
///
///

19

**IV. Order**

Appellant's motion for stay pending appeal is DENIED.  Per this court's Order of February 2, 2006, the existing district court stay (of Judge Rimel's July 11, 2005 Order Granting Motion to Avoid Judicial Liens in Bankruptcy Case No. 04-19318-A-7) expires at 6 PM Tuesday, February 28, 2006.


IT IS SO ORDERED.

**Dated:    February 28, 2006**                    _____/s/ Anthony W. Ishii_____
0m8i78                                                       UNITED STATES DISTRICT JUDGE