UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: WILLIAM P. IRWIN<br>Debtor.<br><br>THOMAS H. OHANIAN,<br>Appellant,<br>v.<br>WILLIAM P. IRWIN,<br>Appellee. | DISTRICT COURT CASE NO. CIV-F-05-0940 AWI<br><br>BANKRUPTCY COURT CASE NO. 04-19318-A-7<br><br>ORDER DISMISSING APPEAL AS MOOT |

The matter is before the court on a bankruptcy appeal. Appellee made a motion to have the appeal dismissed, claiming that the sale of real property in a foreclosure sale has rendered the adversary proceeding moot. Appellant opposes that contention, arguing that the court may still fashion some form of equitable relief should the court find in his favor.

## I. History

William Irwin ("Irwin") filed a Chapter 7 bankruptcy petition on November 3, 2004. A Chapter 7 Trustee, James Salven ("Trustee Salven"), was appointed and the case was assigned to Bankruptcy Judge Whitney Rimel. At the time of his filing, Irwin resided at 1441 Morris Avenue in Fresno ("Property"). The undisputed fair market value of the Property was $425,000. As part of his initial bankruptcy filing, Irwin claimed a $150,000 homestead exemption under

Cal. Code of Civ. Proc. §704.730(a)(3).[1] Bank of America held a $188,647 deed of trust on the Property as of that date. Irwin also owed Fresno County $17,482.92 secured by a tax lien on the Property. In addition, three judgment liens existed against the Property (listed in order of senior to junior): Richard Gunner ("Gunner") perfected a $55,760.24 lien on September 7, 1999; Thomas Ohanian ("Appellant") perfected a $209,482 lien on June 19, 2001; and Jim O'Neal ("O'Neal") perfected a $100,991 lien on July 6, 2004. The origin of Appellant's lien was a monetary judgment in an earlier case where Appellant's father sued Irwin for breach of contract, fraud, and malpractice. With interest accruing on the liens, the amount owed plus the $150,000 homestead exemption exceeded the fair market value of the Property.

Since 1994, the formal owner of the Property was the "William P. Irwin and Jo Ann Irwin Revocable Living Trust." Their daughter, Tracy Barry ("Appellee"), was named the liquidating trustee upon their deaths. Under the design of revocable living trust, property passes in accordance with the terms of the trust, avoiding probate; the liquidating trustee normally manages the assets without court supervision. Jo Ann Irwin had passed away by the time the bankruptcy petition was filed. William Irwin passed away on November 7, 2004.

On March 16, 2005, in the name of William Irwin, the law firm of McCormick, Barstow, Sheppard, Wayte & Carruth, LLP ("McCormick") filed a motion to avoid judgment liens on the Property pursuant to 11 U.S.C. §522(f), impairment of homestead exemption. The motion was denied without prejudice on April 13, 2005 due to defective service. On April 27, 2005, McCormick filed a second motion to avoid judgment liens on the Property. Filed concurrently was a motion by Appellee to substitute herself in for Irwin for the purpose of making the second motion to avoid judgment liens. Appellant (but neither Gunner nor O'Neal) opposed the

---

[1]Cal. Code of Civ. Proc. § 704.730(a)(3) requires those seeking an exemption to qualify under one of its three subparts. The record before the court does not show which prong Irwin falls into. However, there is no indication that Ohanian has raised or disputed this issue. Judge Rimel states that "No one has challenged the exemption claimed by the debtor when the case was filed." Doc. 19, Ex. H, at 6:26-27. So, it is assumed that Irwin qualified under one of the three subparts. California has opted out of the federal exemption scheme, and so debtors in California are entitled to the California homestead exemption. Kendall v. Pladson, 35 F.3d 462, 464 (9th Cir. 1994).

motions. Oral argument was held on May 25, 2005 after which Judge Rimel took the matters under submission. On June 29, 2005, Judge Rimel issued findings of fact and conclusions of law granting both the second motion to avoid judicial liens and the motion to substitute parties. On July 11, 2005, Judge Rimel formally issued a written order avoiding judicial liens ("OAL") and an order substituting parties ("OSP"). The OSP substituted Appellee for Irwin with respect to the motion to avoid judicial liens. Bank of America's deed of trust and the tax lien were unavoidable; they totaled $206,129.92. Gunner's lien had increased to $85,758.56 by the petition date due to interest. The OAL completely avoided Appellant's $209,482 lien and O'Neal's $100,991 lien while avoiding Gunner's lien to the extent it exceeded $68,870.08. That amount plus the $150,000 homestead exemption and the unavoidable liens equaled the fair market value of the Property ($425,000).

On July 20, 2005, Appellant filed a notice of appeal as to both OAL and OSP, bringing the matter to this court. On August 9, 2005, Ohanian filed a motion to stay the effectiveness of the OAL. By oral ruling at a August 31, 2005 hearing and by written order on September 12, 2005, Judge Rimel granted a temporary stay of the OAL to allow Appellant to raise the issue of a stay with the district court. On January 31, 2006, Appellant made a motion in this court for a stay pending final resolution of the appeal. Appellee opposed the motion and oral argument on the matter was held on February 27, 2006. The court denied the request for stay by written order on March 2, 2006.

Meanwhile, on July 28, 2005, Trustee Salven filed a "Notice of Intent to Abandon Property" which indicated his plan for the bankruptcy estate to abandon its interest in the Property pursuant to 11 U.S.C. §554(a) claiming the Property was burdensome and of inconsequential value to the estate. On September 7, 2005, Appellee filed a motion to compel abandonment the Property pursuant to 11 U.S.C. §554(b) in her status as a party in interest. Appellant opposed the motion while the Trustee Salven did not. A hearing was held on October 5, 2005 at which time the matter was taken under submission. On January 12, 2006, Judge Rimel issued findings of fact and conclusions of law and a separate order compelling abandonment ("OCA"). Judge Rimel specifically found that Appellant is either a secured or

unsecured creditor of the Irwin estate, depending on the disposition of the pending appeal.[2] Doc. 19, Ex. H, Findings of Fact, at 5:18-20. Trustee Salven filed a "Notice of Abandonment" of the Property on January 20, 2006. Appellant thereafter filed a separate appeal of the OCA. By order of this court, the two appeals were consolidated on March 23, 2006.

After the consolidated appeal was briefed, Appellee filed a motion to have the appeal dismissed as moot on September 6, 2006. Appellee informed the court that the Property was sold at a foreclosure sale on August 11, 2006. Appellant opposed the motion arguing there exists a live controversy notwithstanding the sale.

Appellant lists the following as the issues presented by the appeal:

> 1. Did the Bankruptcy Court err in finding that a deceased Debtor had the capacity to bring a motion to avoid liens or that his lawyer could do so on his behalf, or in simply discounting this issue without making any finding?
>
> 2. If the original moving party named as the filer of the motion to avoid liens lacked legal capacity, was this defect cured or mitigated by the filing of a concurrent motion, filed by a trustee of a Trust established by the moving party decedent, to 'substitute' the trustee in as a party under F.R.B.P. 7025?
>
> 3. Was there any legal basis under either federal bankruptcy law or California law or otherwise for permitting a trustee of a Trust established by the deceased Debtor to 'substitute' into the decedent's motion to avoid liens?
>
> 4. Even if Tracy Barry could qualify as a 'successor' for purposes of F.R.C.P. 25(a), did she qualify as the 'successor in interest' for purposes of substituting into the contested matter as the proper party/real party in interest?
>
> 5. Notwithstanding authority to the effect that a deceased debtor's estate may benefit from an exemption, did the Court have any authority to effectively extend that benefit by granting a Section 522(f) motion to avoid liens <u>impairing</u> an exemption, where the motion was not brought and could not be brought by the Debtor personally?
>
> 6. Even if the Court had the authority to grant a Section 522(f) motion to avoid liens by a deceased debtor or his non-bankruptcy trustee, was it error on the part of the Court to do so on the record made by the moving party and by Appellant as to the status of the subject property?
>
> 7. Did the court err in finding that Debtor's interest in the property was a 'contingent reversionary interest' when it had instead been scheduled as a fee simple interest in real property in Debtor's Schedule A?
>
> 8. Did the Bankruptcy Court err in assuming jurisdiction over a motion to compel abandonment where issues involved in the motion were already on appeal?
>
> 9. Did the Bankruptcy Court err in holding that Tracy Barry had standing to compel the Trustee to abandon property?
>
> 10. Did the Bankruptcy Court err in holding that Tracy Barry had met her burden of proof that the subject property was either a burden to the estate or was of inconsequential value to the estate?

---

[2] The court previously said that Ohanian was not a creditor of any kind. Doc. 22, Order Denying Stay, at 3:24-26. That erroneous statement was based on a misreading of the record and does not affect the conclusions in that Order in any way.

Doc. 26, Appeal Brief, at 1:11-3:4.

## II. Legal Standards

"Mootness is a jurisdictional question because the Court is not empowered to decide moot questions or abstract propositions; our impotence to review moot cases derives from the requirement of Article III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy." North Carolina v. Rice, 404 U.S. 244, 246 (1971). "If a case becomes moot while pending on appeal, it must be dismissed." In re Pattullo, 271 F.3d 898, 900 (9th Cir. 2001). "The party asserting mootness has the heavy burden of establishing that there is no effective relief remaining for a court to provide." GATX/Airlog Co. v. United States Dist. Court, 192 F.3d 1304, 1306 (9th Cir. 1999).

## III. Discussion

"Bankruptcy's mootness rule applies when an appellant has failed to obtain a stay from an order that permits a sale of a debtor's assets." In re Onouli-Kona Land Co., 846 F.2d 1170, 1171 (9th Cir. 1988). Indeed, "The classic example of mootness in the bankruptcy context is a case in which the debtor has failed to seek a stay of foreclosure and the debtor's property has been sold. The transfer to a third party precludes meaningful relief." In re Baker & Drake, Inc., 35 F.3d 1348, 1351 (9th Cir. 1994). Under the bankruptcy code, a court approved sale of estate property to a good faith third party purchaser can not be undone even when the third party purchaser knows that the court's approval is being challenged on appeal. "The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal." 11 U.S.C. §363(m). "[C]ourts generally have followed traditional equitable principles in holding that a good faith purchaser is one who buys 'in good faith' and 'for value.' Typically, lack of good faith is shown by fraud, collusion between the purchaser and other bidders or the trustee, or an attempt

to take grossly unfair advantage of other bidders." In re Ewell, 958 F.2d 276, 281 (9th Cir. 1992), citations omitted. Thus, "where real property is sold to a creditor who is a party to the appeal," the case is not moot. In re Sun Valley Ranches, 823 F.2d 1373, 1375 (9th Cir. 1987). In this case, the bankruptcy court did not order sale of the Property but rather its abandonment by the trustee. The distinction is immaterial for mootness analysis. Cf. In re Onouli-Kona Land Co., 846 F.2d 1170, 1171 (9th Cir. 1988) ("Whether an order directly approves the sale or simply lifts the automatic stay, the mootness rule dictates that the appellant's failure to obtain a stay moots the appeal").

Appellant argues that the case is not moot; his view of the appeal is as follows:

> The appeal at hand was never about the rights that Tracy Barry had in property, nor in fact was it only about rights that Ohanian had in property of William Irwin. Instead, it was primarily about whether Ohanian's claim against Irwin should have continuing secured status or not. If it turns out that Barry was wrong about that issue and that Ohanian's secured status should have been preserved, Ohanian will still have one of two remedies even if he has no ongoing recourse to property: a claim on excess sale proceeds to the extent that a superior claim is not made; or (to the extent it can be determined that it was Barry's act or her law firm's act that was a cause of Ohanion's damage) a claim for damages against Barry or her law firm.

Doc. 39, Mootness Opposition, at 12:20-13:5. He further argues that the controversy is still live under a number of theories:

> To the extent that Barry and/or her law firm allowed the property to go to foreclosure as a stratagem in their dispute with Ohanian, they would also face exposure to Ohanian for that reason, independent of any other....Ohanian in his appeal has also challenged the authority or standing of Tracy Barry to either seek lien avoidance or seek an order compelling abandonment. To the extent that this Court or a higher court would determine that Barry did not have standing, Barry has exposure for that reason as well. Ohanian would also have a claim against the foreclosure trustee since defects in the sale process have rendered the trustee's sale either voidable or void...Ohanian would also be entitled to prove that the premature action of Trustee James Salven in abandoning the property was a cause of the impairment of Ohanian's rights and interests, and thus that Ohanian has a claim for damages against Salven even if he has no continuing recourse to the property.

Doc. 39, Mootness Opposition, at 13:10-14:9. Appellant's arguments appear to fall into the following categories: excess sales proceeds are available; the sale is voidable; Trustee Salven prematurely abandoned the Property; and Appellee and/or her lawyers have wrongfully inserted themselves into this action.

**A. Excess Proceeds From Foreclosure Sale**

Appellee has provided the statement of attorney Stephen Drobny that on August 11, 2006, he was present at the foreclosure sale of the Property where the high bid was $281,000. Doc. 45, Drobny Declaration, at 2:1-7. The trustee's deed upon sale, recorded with the Fresno County Recorder on August 23, 2006, reflects sale of the Property to Joe David Toney. Doc. 46, Ex. A. Appellee also provided a letter from Gunner to Integrated Lender Services (the company that executed the foreclosure sale), asserting the $68,870.08 lien. Doc. 45, Ex. A. Together with the $213,348 which was due Bank of America, their senior claims have completely exhausted the $281,000 sale price. Based on these facts, there are no excess proceeds available.

Appellant instead submits that, "One can think of a number of hypothetical scenarios on the facts known (and unknown) in which Ohanian still might be entitled to some of the excess sale proceeds. Again, it would be up to Barry to show that this outcome was not possible in order to prove mootness." Doc. 39, Mootness Opposition, at 12:12-16. Appellant essentially argues that there is no mootness unless Appellee rules out every possible hypothetical legal claim based on every possible supposed fact. Where a party has demonstrated that developing events have mooted an appeal as articulated, that party need not address every random hypothetical dealing with other speculative causes of action to have the appeal dismissed. Cf. GATX/Airlog Co. v. United States Dist. Court, 192 F.3d 1304, 1307 (9th Cir. 1999) ("speculative contingency" insufficient to present live controversy).

Appellant does allege that "Bank of America, may have impermissibly advanced optional funds to Irwin after one or more of the junior holders of lien on the property had already recorded their liens, thus imperiling the Bank's right to a senior position as to the proceeds of sale." Doc. 39, Mootness Opposition, at 8:26-3. Appellee ignores Apellant's contention, stating "nor does [Apellant] dispute that Bank of America was owed $213,348.00 on the first deed of trust." Doc. 44, Mootness Reply, at 2:5-6. Attorney Bruce Leichty states:

> At some point during the course of my representation of Mr. Ohanian in this case (and specifically during the five years since his judgment was recorded), I became aware of a contention by either William Irwin or Bank of America or both that Bank of America had advanced further optional funds to Irwin after either the date the Gunner and Andros lien was recorded or after Mr. Ohanian's lien was recorded or both. Although I have not

> reached a firm conclusion and not been able to do a full analysis, I recall having questions about whether Bank of America had a security interest equal in seniority to its predecessor's original advance to Irwin under its predecessor's security instrument for these subsequent optional advances.

Doc. 40, Leichty Declaration, at 3:15-26. This is a serious allegation that, if true, could have rendered some portion of Bank of America's lien junior to Appellant's lien. Under California law, "It is well established that while a senior mortgagee can enter into an agreement with the mortgagor modifying the terms of the underlying note or mortgage without first having to notify any junior lienors or to obtain their consent, if the modification is such that it prejudices the rights of the junior lienors or impairs the security, their consent is required. Failure to obtain the consent in these cases results in the modification being ineffective as to the junior lienors and the senior lienor relinquishing to the junior lienors its priority with respect to the modified terms." Lennar Northeast Partners v. Buice, 49 Cal. App. 4th 1576, 1589 (Cal. Ct. App. 1996), citations omitted. "The lien of the mortgage cannot be enforced as against subsequent encumbrances, of which the mortgagee has actual notice, for advancements or indorsements made or given after such notice." Atkinson v. Foote, 186 P. 831, 835 (Cal. Ct. App. 1919), citations omitted.

However, this new argument goes to the heart of the underlying controversy and is being raised for the first time on appeal. Appellant is essentially claiming that part or all of his lien should not have been avoided as it may have been senior to the Bank of America's lien. This matter needed to be argued in bankruptcy court before the issuance of the OAL. The statement by Bruce Leichty makes it plain that this is not an argument based on newly discovered evidence which could not have reasonably been discovered before. If he believed that Bank of America advanced optional funds to Irwin against the mortgage on the Property, then he should not have kept silent until now. This court will consider new arguments that arise due to the changed factual circumstances (sale of Property) but will not consider new arguments that should have been previously raised. As this is a claim that would not be considered in addressing the substance of the appeal, the court does not consider it for mootness analysis. Further, as Appellant has not raised the issue previously, the appeal as articulated is ill suited for determining the rights of the relevant parties. Bank of America is not a party to the appeal as

Appellant never objected to its senior lienholder status previously.

**B. Sale Voidable Due to Defects**

Appellant alleges that irregularities in the foreclosure sale of the Property may render that sale void or voidable. Appellant provides no evidentiary support for his allegations of procedural impropriteies aside from a statement by attorney Bruce Leichty. Doc. 40, Leichty Declaration, at 3:27-4:13. As far as can be determined, the factual assertions are as follows: at some undetermined time in the past, the Property was secured by a trust deed in favor of Equitable Deed Co; 3 Arch Trustee Services was substituted in place of Equitable Deed Co at an undetermined date and was the trustee as of April 19, 2006; on that date, Integrated Lender Services issued a notice of default on the Property though it was not the trustee; a substitution of trustee notice for the Property was recorded on April 20, 2006 which purported to substitute Integrated Lender Services in place of Equitable Deed Co. It is uncontested that Integrated Lender Services issued a notice of trustee's sale on July 20, 2006 and sold at auction the Property on August 11, 2006. Appellant argues the"presumption of validity that a foreclosure sale has been conducted regularly and fairly....can be overcome by evidence of improper procedure." Doc. 39, Mootness Opposition, at 7:11-18. No citation for this proposition is provided.

The court finds the irregularities cited to be inconsequential and highly unlikely to have an effect on the validity of the foreclosure sale. Appellant states that a "junior lienholder retains right to recover damages where there are material irregularities in the conduct of the foreclosure." Doc. 39, Mootness Opposition, at 14:1-4, citing South Bay Bldg. Ent., Inc. v. Riviera Lend-Lease, Inc., 72 Cal. App. 4th 1111 (Cal. Ct. App. 1999). The key word in that statement is "material." In the South Bay case, the "[junior lienholder's] evidence established that [senior lienholder] postponed the foreclosure sale several times in order to preclude others from bidding against [senior lienholder]; that at the first sale a potential buyer was present with a $225,000 cashier's check; and that [senior lienholder] falsely represented that its security interest was larger than it actually was in order to deter other bidders." South Bay Bldg. Ent., Inc. v. Riviera Lend-Lease, Inc., 72 Cal. App. 4th 1111, 1114-5 (Cal. Ct. App. 1999). None of the irregularities

cited by Appellant are material; they do not affect the amount raised through the foreclosure sale. Under California law, "[t]he trustee under a trust deed upon real property or an estate for years therein given to secure an obligation to pay money and conferring no other duties upon the trustee than those which are incidental to the exercise of the power of sale therein conferred, may be substituted by the recording in the county in which the property is located of a substitution executed and acknowledged..." Cal Civ Code §2934a(1). Notwithstanding the formal requirements, "reformation may validate a foreclosure sale under section 2934a when a former trustee mistakenly conducts the sale after a new trustee has been substituted." Jones v. First American Title Ins. Co., 107 Cal. App. 4th 381, 383 (Cal. Ct. App. 2003). Any defects in the sale of the Property could be remedied by minor reformation of the contract.

Appellant also attacks the characterization of the buyer as a good faith purchaser, saying that he "is not in a position to know at this time whether the alleged buyer at foreclosure, 'Joe David Tony,' acted in league with Barry or the McCormick firm to preserve the property for Barry, but at a minimum Movants have not provided evidence obviating that possibility." Doc. 13, Mootness Opposition, at 13:14-18. Appellant provides no evidence that even hints at collusion, instead merely speculating on theoretical possibilities. While the burden on showing mootness is on Appellee, Appellant must make a definitive allegation based on fact that the buyer is not a good faith purchaser. Cf. In re Abbotts Dairies, 788 F.2d 143, 148 (3rd Cir. 1986) (no mootness since there were allegations which, if substantiated, would constitute collusion).

**C. Trustee Salven's Actions**

Appellant objects to Trustee Salven's abandonment of the Property, stating:

> An appealed order requiring abandonment is, by dint of being appealed, not yet a final and enforceable order requiring abandonment. Since the abandonment order was merely declaratory in effect (rather than injunctive or for money) Ohanian was not required to obtain a stay of this order to forestall its execution, and a prudent trustee would have refrained from abandoning the property pending Ohanian's appeal. Since Trustee Salven instead opted to effectively take sides between the litigants and prematurely abandon the property before the appeal of the lawfulness of the court's order requiring abandonment was resolved...he has exposure to Ohanian to the extent that this Court finds that the Bankruptcy Court erred in compelling abandonment.

Doc. 39, Mootness Opposition, at 14:9-21. Apellant misstates the law on two points. First, simple appeal of the OCA does not render the it unenforceable. In fact, failure to obtain a stay of the OCA from either the bankruptcy court or the district court makes the OCA a fully enforceable court order. Cf. Fed. R. Bankr. Proc. 8005; In re Vista Del Mar Assocs., 181 B.R. 422, 424 (B.A.P. 9th Cir. 1995) ("when an appellant fails to obtain a stay from an order that permits a sale of the debtor's asset, the appeal will be rendered moot"; the order is valid and executed despite the appeal). "The general rule that a properly filed notice of appeal deprives the trial court of jurisdiction to proceed further except by leave of the appellate court does not apply in bankruptcy proceedings." In re Christian & Porter Aluminum Co., 584 F.2d 326, 334 (9th Cir. 1978). Second, the OCA is not declaratory. Title 11 U.S.C. §554(b) provides that, "On request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." The OCA does not clarify the rights of the parties but rather directs Trustee Salven to affirmatively abandon the Property. Trustee Salven had no choice but to comply with the bankruptcy court's order.

In general, the Ninth Circuit has found "the practical necessities involved in a successful reorganization require that unless an order of the bankruptcy judge or the district judge is stayed pending appeal, the trustee's acts in accordance with that order should not thereafter be subject to reversal, even if the order is subsequently overturned on appeal." In re Combined Metals Reduction Co., 557 F.2d 179, 189 (9th Cir. 1977). Appellant has no recourse against Trustee Salven for his actions in obeying the OCA.

**D. Appellee's and McCormick's Actions**

Appellant claims the motion to avoid liens was one where "Movants [were] asking for declaratory relief (specifically that decedent William Irwin was entitled to an order avoiding Ohanian's lien)." Doc. 39, Mootness Opposition, at 3:25-27. Appellant states, "If this court now rules that the Bankruptcy Court had the duty to deny Barry's requests, then it will necessarily be because Tracy Barry and/or her law firm was an interloper, which has an effect independent from

whether Ohanian still has recourse to his lien rights." Doc. 39, Mootness Opposition, at 4:16-20. In effect, Appellant believes that he will have some sort of legal claim against Appellee and/or McCormick if he can get a declaratory judgment stating that they acted wrongfully in procuring the OAL, OSP, and OCA. Appellant treats the matter as an appeal of a declaratory judgment and asserts that there is a different mootness analysis in such cases. Doc. 39, Mootness Opposition, at 4:21-5:2.

An appeal of a declaratory judgment is not moot where there is ongoing substantive effect. The U.S. Supreme Court has described the situation as one where the underlying threat of activity complained of "has not evaporated or disappeared, and, by its continuing and brooding presence, casts what may well be a substantial adverse effect on the interests of the petitioning parties." Super Tire Eng'g Co. v. McCorkle, 416 U.S. 115, 122 (1974). However, that presence and effect must be actual and not merely conjectural. The situation at hand profits from comparison to In re Burrell, 415 F.3d 994 (9th Cir. 2005). In that case, before the debtor declared bankruptcy, the appellant assigned certain copyright interests to debtor for monetary payment. After the debtor entered bankruptcy, the parties disputed which copyright interests were included in the contract. The appellant objected to the debtor's planned discharge on the basis that certain of debtor's claimed copyright interests belonged to appellant. The bankruptcy court dismissed the objection and found that debtor's interpretation of the contract was correct. The appellant appealed, but the debtor's discharge was denied by the bankruptcy court based on other objections. The Ninth Circuit found the adversary proceeding moot sua sponte despite the appellant's claim that the bankruptcy court's ruling concerning the contract left a "taint" on his ownership rights over the copyright interests. In re Burrell, 415 F.3d 994, 998 (9th Cir. 2005). "[T]he specter of continuing legal harm from res judicata or collateral estoppel arising from his mooted claims when such harm is merely hypothetical and speculative" is an insufficient basis for continuing the appeal even to for purposes of declaratory judgment. In re Burrell, 415 F.3d 994, 999 (9th Cir. 2005). The paradigmatic example of live controversy in the declaratory judgment context is a challenge to a criminal conviction even after the full sentence has been served. The consequences of having the conviction on an individual's record have immanent

collateral legal consequences (voting, gun ownership, rights to federal benefits, etc.) that defeat claims of mootness. See Spencer v. Kemna, 523 U.S. 1, 12 (1998).

Allusion to a suit against Appellee and/or McCormick that may or may not take place in the future does not make a live controversy. Furthermore, Appellant does not even specify the nature of such suit and what sorts of legal claims he hopes to make. "It is simply not sufficient for a party to mention a possible argument in the most skeletal way and leave for the court the task of putting flesh on its bones." Chao v. Port City Group, 2005 U.S. Dist. LEXIS 28691, *12 n.3 (W.D. Mich. 2005). "[C]onclusory allegations of continuing injury and collateral consequences" are insufficient to show a live controversy. Beattie v. United States, 949 F.2d 1092, 1094 (10th Cir. 1991).

**E. Mootness Procedure**

As there is no longer subject matter jurisdiction in this case, the court expressed no opinion on the merits of the appeal. "[B]ecause of the unfairness of the enduring preclusive effect of an unreviewable decision in the case of a civil action that has become moot on appeal, the established practice of the court is to reverse or vacate the judgment below and remand with a direction to dismiss" except "when the appellant has by his own act caused the dismissal of the appeal." In re Burrell, 415 F.3d 994, 999 (9th Cir. 2005), quoting United States v. Munsingwear, Inc., 340 U.S. 36, 39 (1950) and Ringsby Truck Lines, Inc. v. W. Conference of Teamsters, 686 F.2d 720, 722 (9th Cir. 1982). This appeal has been mooted due to events beyond Appellant's control. Consequently, the OAL, OSP, and OCA must be vacated. Vacation will not change any of the parties' legal rights with respect to the Property.

/ / /

/ / /

/ / /

/ / /

/ / /

## IV. Order

Appellee's motion to dismiss the appeal as MOOT is GRANTED. The Order Substituting Parties, Order Avoiding Liens, and Order Compelling Abandonment are VACATED. The case is remanded to the bankruptcy court for dismissal.

IT IS SO ORDERED.

**Dated: June 13, 2007** **/s/ Anthony W. Ishii**
UNITED STATES DISTRICT JUDGE